UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| GUSTAVE FULLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:04-CV-522 AS |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION, | ) ) | |
| | ) | |
| Defendant. | | |

**REPORT AND RECOMMENDATION**

On August 12, 2004, Plaintiff Gustave Fuller (Fuller) filed his complaint in this Court. On February 23, 2005, Fuller filed an opening brief, and he now asks this Court to enter judgment in his favor or to remand this matter to the Commissioner. On March 22, 2005, Defendant Social Security Administration (SSA)filed its response brief. Fuller never filed a reply brief. On July 17, 2006, this matter was referred to the undersigned to conduct such proceedings as necessary to enter a report and recommendation. The following Report and Recommendation is based upon the record of this case that includes the pleadings, the motions, the administrative record, briefs of the parties, and the arguments of counsel.

**I.   PROCEDURAL BACKGROUND**

On April 13, 2001, Fuller filed his application for Disability Insurance Benefits.  (Tr. 123-126).  Fuller claims a disability onset date of January 25, 2000.  (Tr. 123).  Fuller claims he is entitled to benefits pursuant to Titles II of the Social Security Act.  See 42 U.S.C. §§ 416(I), 423, 1381a.  (Tr. 11, 94).  Fuller's application was denied initially and again upon reconsideration.  He then filed a request for a hearing before an Administrative Law Judge (ALJ), which was granted.  (Tr. 11, 322-61).

The ALJ found that Fuller had not engaged in substantial gainful activity since January 25, 2000. (Tr. 18). He also found that Fuller's alleged impairments of depression, generalized anxiety disorder, bulging discs and degenerative disc disease of the spine, scoliosis, carpal tunnel syndrome, and headaches were severe. (Id.). However, the ALJ found that Fuller's impairments, either singly or in combination, did not meet any impairment listed in 20 C.F.R. app. 1, subpart P, § 404. (Id.). Although the ALJ found that Fuller could not perform any past relevant work, the ALJ determined Fuller had the residual functional capacity to perform medium exertional work and/or light exertional level work. (Tr. 19). Further, there were a significant number of jobs in the national economy that he could perform. (Id.).

Fuller appealed the ALJ's decision to the Appeals Council. (Tr. 6-7). The Appeals Council denied review, and as a result, the ALJ's decision became the Commissioner's final decision. (Tr. 3); 20 C.F.R. § 404.981; Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005). Consequently, on August 12, 2004, Fuller filed a complaint in this Court seeking a review of the ALJ's decision. This Court may enter a report and recommendation in this matter based on its referral order, 28 U.S.C. § 636(b)(1)(B), and 42 U.S.C. § 405(g).

**II.     ANALYSIS**

    A.     Facts

Fuller, at the time the Appeal's Council denied to review the ALJ's decision, was fifty (50) years old with a high school graduate equivalency certificate. (Tr. 12, 123). Fuller has had a wide variety of jobs in the past, but most recently, he was a metallurgical technician and performed duties such as processing metal alloy samples for testing. (Tr. Tr. 112, 118, 336). On January 25, 2000, Fuller claims he became disabled. (Tr. 18, 326).

Fuller suffers from a variety of problems including: gastroesophageal reflux disease, gastroparesis, esophageal motility disorder, diabetes, hypertension, asthma, a scapula condition, bulging discs, degenerative disc disease of the spine, scoliosis, carpal tunnel syndrome, and headaches. (Tr. 11-12, 128). However, Fuller's two main conditions that contribute his alleged disability are his back troubles and, more significantly, his depression and anxiety disorder. (Tr. 12, 128, 326-27).

Fuller testified that in a typical day he eats breakfast, then he reads for about an hour on the computer, and then he lies on the couch for most of the day. (Tr. 326). He will occasionally put the dog out if necessary and he will help the kids get ready for school. (Id.). He does not pay bills, as his wife primarily takes care of that responsibility. (Tr. 328). Fuller rarely leaves the house to do any other activity except to attend family diners. (Tr. 82, 348). Fuller saw many doctors to assist him with his health problems, but three of these doctors are of particular importance.[1]

1. Dr. Sasso

In 1995, Fuller saw Rick Sasso, M.D., (Dr. Sasso). Fuller saw Dr. Sasso at least twice. (Tr. 288, 290). Dr. Sasso found that Fuller had significant degenerative changes and calcified discs throughout his lumbar spine. (Tr. 290). He also found Fuller had significant large anterior osteophytes present with significant end plate changes and signs of multi-level degenerative disc

---

[1] Fuller makes no argument that the ALJ failed to consider an entire line of evidence, or that any other physician in the administrative record was a treating physician. This case contains a myriad of medical documents involving numerous physicians. This Court will not raise or consider arguments on Fuller's behalf. Fuller only asserts that the ALJ failed to properly give weight to three physicians. Therefore, this Court limits its review to these three physicians.

disease throughout the thoracic region.  (Id.).  With Fuller's second visit, Dr. Sasso had no other assessments.  (Tr. 288).

    2.    <u>Dr. Silbert</u>

Robert K. Silbert, M.D., (Dr. Silbert) was another physician who commented on Fuller's back pain.  However, Dr. Silbert was not one of Fuller's treating physicians, but instead performed an independant medical evaluation.  (Tr. 38-44).  Dr. Silbert found that Fuller's neck and low back pain were discogneic, and he had enough pathology on his MRI to account for all of his symptoms. (Tr. 38).  Further, Dr. Silbert found that Fuller evidenced depression, and he had evidence of a soft tissue condition affecting his right scapula.  (Tr. 38).

    3.    <u>Dr. Strus</u>

Fuller's psychologist, David F. Strus, Ph. D, (Dr. Strus) has treated him since 1998.  (Tr. 45).  Fuller saw Dr. Strus regularly from February of 2001 through July of 2002. (51-75, 149-153, 164-175).  On May 22, 2001, Dr. Strus completed a federal disability determination form. (Tr. 254- 59).  Dr. Strus diagnosed Fuller with major, severe, and recurrent depression.  (Tr. 254).  Dr. Strus indicated that Fuller would not be able to perform a simple repetitive task continuously for a two hour period and that he would have to have a reduced work pace.  (Tr. 258).

From February of 2001 to August of 2001, Dr. Struss indicated that Fuller was improving.  (Tr. 149-175).  In February of 2001, Dr. Struss indicated that Fuller was stable, but he feared sending him back to work because it would recreate Fuller's problems.  (Tr. 175).  In June of 2001, Dr. Struss indicated Fuller had made substantial improvement.  (Tr. 153, 164-66).  On August 21, 2001, Dr. Strus indicated Fuller was generally euthymic and was at the best he

4

has ever seen him.  (Tr. 149).   On November 13, 2001, Dr. Strus indicated that although Fuller had a myriad of psychological problems, he believed Fuller's depression was the result of his medical difficulties.  (Tr. 56).  Dr. Strus continued to believe that Fuller was disabled and suffering from depression.  (Tr. 51-75, 149-75)

In December of 2001, and early 2002, Fuller was denied his benefits from his private insurance disability provider.  (Tr. 61, 64-66).  Dr. Struss indicated that the private provider denied Fuller's benefits, at least in part, because of his statements.  (Tr. 61).  Dr. Strus indicated, "[a]pparently a statement that I had made in a November dictation that Gus was 'stable,' was interpreted as meaning that he was able to return to work.  I very much did not intend to be implying that.  I think without question that Gus would deteriorate very significantly if he went back to work."  (Id.).   Afterwards, Dr. Strus's notes reflect that Fuller was doing worse.  (Tr. 58-74).

The issue this Court must resolve is whether the ALJ's determinations to not award Fuller's treating physicians controlling weight was supported by substantial evidence.

    B.    <u>Standard of Review</u>

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error.  <u>See</u> 42 U.S.C § 405(g); <u>Briscoe v. Barnhart</u>, 425 F.3d 345, 351 (7th Cir. 2005); <u>Haynes v. Barnhart</u>, 416 F.3d 621, 626 (7th Cir. 2005); <u>Golembiewski v. Barnhardt</u>, 322 F.3d 912, 915 (7th Cir. 2003).  Substantial evidence is more than a scintilla and means such relevant evidence as a reasonable mind might accept to support such a conclusion. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1972).  A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge

5

from the evidence to his conclusion.  Haynes, 416 F.3d at 626.  An ALJ decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues.  Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003).  However, an ALJ's legal conclusions are reviewed *de novo*.  Haynes, 416 F.3d at 626.

      C.     Fuller's Motion for Summary Judgment or Remand

To be entitled to benefits under 42 U.S.C. §§ 423, 1321a, Fuller must establish that he was "disabled."  See 42 U.S.C. § 423(a)(1)(D).  The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).  The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled.  The ALJ must consider whether: 1) the claimant is presently employed; 2) the claimant has a severe impairment or combination of impairments, 3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity, 4) the claimant's residual functional capacity leaves him unable to perform his past relevant work, and 5) the claimant is unable to perform any other work existing in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920; Briscoe, 425 F.3d at 352.  If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If there is an affirmative answer at either step three or step five, then there is a finding of disability.  Briscoe, 425 F.3d at 352.  At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner.  See 20 C.F.R. § 404.1520(a)(4)(iii); 20

6

C.F.R. app. 1, subpart P, § 404.  However, if the impairment is not so listed, the ALJ assesses the claimant's residual functional capacity, which in turn is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society under step five.  20 C.F.R. § 404.1520(e).  The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five.  Id.

The ALJ found that Fuller's residual functional capacity allowed him to perform other work that existed in significant numbers in the national economy at step five.  As a result, he was not disabled.  Fuller argues that the ALJ failed to give the appropriate amount of deference to Fuller's treating physicians in making his residual functional capacity assessment of Fuller.[2]

An ALJ is to give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record.  Hofslien v. Barnhart, 439 F.3d 375, 376 (7th Cir. 2006). "This rule . . . seems to take back with one hand what it gives with the other, and as a result to provide little in the way of guidance to either ." Id.  More weight is generally given to the opinion of a treating physician because he is more familiar with the claimant's conditions and circumstances.  20 C.F.R. § 404.1527(d)(2);  Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000).  Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence in the record.  Clifford, 227 F.3d at 870.  When evidence in opposition to the presumption is introduced, the rule drops out and the treating physician's evidence is just one

---

[2]Fuller also argues that the ALJ posed an improper hypothetical to the vocational expert.  The arguments are inherently linked.  If Fuller's physicians were entitled to controlling weight, then the hypothetical was incorrect. However, because this Court cannot determine whether the ALJ's opinion that Dr. Strus was not entitled to controlling weight was supported by substantial evidence, this Court can not make a determination on whether the ALJ posed a proper hypothetical.  Thus, this Court addresses only Fuller's arguments regarding his physicians.

more piece of evidence for the ALJ to weigh.  Hofslien, 439 F.3d.at 377 (citations omitted).  Unfortunately, there is no bright line for when a physician's opinion is inconsistent with other substantial evidence in the record, and it is essentially a case by case determination depending on the circumstances.  Id.

      1.     Dr. Silbert

Fuller contests that the ALJ improperly substituted his opinion for that of his treating physician, Robert K. Silbert M.D. (Dr. Silbert).  Dr. Silbert conducted an independent medical evaluation on Fuller.  Dr. Silbert found that Fuller could not lift more than 10 pounds occasionally, stand for up to an hour, and walk no more than a total of one hour per day.  (Tr. 38).  Fuller claims that it was error for the ALJ to disregard this determination by Dr. Silbert when the ALJ made his conclusions about Fuller's residual functional capacity.

The ALJ found that Dr. Silbert was not Fuller's treating physician, and as a consequence, he gave Dr. Silbert's opinion little evidentiary weight.  This determination was reasonable.  A physician is not a treating physician unless he or she has an ongoing relationship with the claimant.  White v. Barnhart, 415 F.3d 654, 658 (7th Cir. 2005).  An ongoing relationship is one in which "the medical evidence establishes that you see or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for . . . medical condition(s)."  20. C.F.R. § 404.1502.  Dr. Silbert's report states in the introduction, "Mr. Fuller was seen today for an Independent Medical Evaluation."  (Tr. 38).  An independent medical evaluation does not suggest Fuller frequently saw Dr. Silbert.  Furthermore, the record suggests Dr. Silbert treated Fuller once because there is only one document regarding Dr. Silbert in the administrative record.  (Tr. 38-44). Consequently, this Court finds the ALJ's

determination that Dr. Silbert was not Fuller's treating physician was supported by substantial evidence.

Because Dr. Silbert was not Fuller's treating physician, the ALJ properly declined to give his opinion controlling weight. All the ALJ was required to do was establish a logical bridge in reaching his conclusions. Here, the ALJ pointed to a variety of other evidence in the record to make his residual functional capacity determination with regards to Fuller's back problems. (Tr. 14). For example, he gave more weight to the opinions of Keith S. Wexler M.D. that Fuller's back problems were minor. (Tr. 14) (ALJ citing to Tr. 291-92, which is the opinion of Keith S. Wexler M.D. following a MRI). An ALJ is entitled to reject a non-treating physician's opinions in favor of other physicians' opinions and evidence in the record. Haynes v. Barnhart, 416 F.3d 621, 631 (7th Cir. 2005). Dr. Silbert was not Fuller's treating physician and his opinion was simply not entitled to controlling weight. The ALJ adequately explained what objective evidence led him to reach a conclusion that differed from Dr. Silbert's. "[I]f conflicting medical evidence is present, the [ALJ] has the responsibility of resolving the conflict." Diaz v. Chater, 55 F.3d 300, 306 n.2 (7th Cir. 1995). This Court will not re-weigh the evidence as Fuller asks by claiming the ALJ should have given more weight to Dr Silbert's opinions than the evidence he cited. The ALJ's determination not to give Dr. Silbert controlling weight was supported by substantial evidence.

   2. Dr. Sasso

Fuller also cites to an opinion by another doctor, Rick C. Sasso, M.D. (Dr. Sasso). While it is unclear whether Fuller is asserting the ALJ should have given more weight to Dr. Sasso's opinion, this Court finds the ALJ decision not to address Dr. Sasso's opinion was supported by

9

substantial evidence. Fuller does not claim nor does it appear that Dr. Sasso is Fuller's treating physician. Dr. Sassos's opinion is on two pages of a administrative record that spans over 300 pages, which suggests Dr. Sasso only saw Fuller twice. (Tr. 288, 290). An ALJ does not need address every piece of evidence. Books, 91 F.3d at 980. Without evidence that a treating physician has a longitudinal perspective, an ALJ has no reason to afford that physician greater weight. Scheck v. Barnhart, 357 F.3d 697, 702-03 (7th Cir. 2004). Because Dr. Sasso's opinion is simply another piece of evidence, the ALJ merely needs to articulate his assessment to assure this Court that he considered the most important evidence so that this Court can trace the ALJ's reasoning. Id. This Court has already determined the ALJ has adequately articulated his assessment regarding Fuller's back problem. As a result, the ALJ's decision not to award Dr. Sasso's opinion controlling weight was supported by substantial evidence.

        3.     Dr. Strus

Dr. Strus is Fuller's psychologist and his final opinion is that Fuller is markedly limited in his ability to work in proximity with others, to interact with the public, react and work with co-workers and supervisors, and in handling changes in his work environment. (Tr. 46-49). Dr. Strus also found that Fuller is completely unable to work based on his mental limitations. (Tr. 45). The ALJ did not give Dr. Strus controlling weight even though ALJ relied on some of Dr. Strus's findings when making his residual functional capacity determination. (Tr. 16). For example, the ALJ found that Fuller could only have superficial interaction with the general public, co-workers, and supervisors. (Tr. 15-16). However, the ALJ did not agree with the opinion of Dr. Strus that Fuller was completely unable to work. (Tr. 16). The ALJ found that Dr. Strus's opinion was both internally inconsistent and not consistent with other objective

10

evidence in the record. (Id.). Based on these determinations, the ALJ did not give Dr. Strus's opinions controlling weight. (Id.).

Fuller contends that the ALJ improperly determined that Dr. Strus should not be given controlling weight. The ALJ found that Fuller had to perform simple and repetitive tasks, with no more than superficial interaction with the public, co-workers, or supervisors. (Tr. 19). Fuller contends that the ALJ improperly determined Fuller's residual functional capacity by not adopting Dr. Strus's opinion that Fuller would be "markedly limited" in his ability to interact with the public, co-workers, or supervisors, and especially by not adopting Dr. Strus's opinion that Fuller could not return to work.

Even though Fuller's treating physician found him to be totally disabled and unable to work, Fuller is not entitled to benefits merely because his treating physician labels him as disabled. Dixon v. Massanari, 270 F.3d 1171, 1177 (7th Cir. 2001). Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence in the record. Clifford, 227 F.3d at 870. However it is axiomatic that the ALJ decision cannot stand if it lacks an adequate discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). This Court finds that the ALJ's determinations, that Dr. Strus's opinions were both internally inconsistent and inconsistent with other evidence in the record, lacked an adequate discussion. As a consequence, this Court cannot determine whether the ALJ's decision is supported by substantial evidence.

      a. <u>The ALJ did not articulate why Dr. Strus's opinion was not consistent with evidence in the record</u>

The ALJ stated, "the mental functional limitations he [Dr. Strus] described are not supported by the objective findings resulting from the claimant's mental status examination or by other evidence of the record, including the claimant's daily activities." (Tr. 16). This statement is conclusive and vague. The ALJ does not describe or reference Fuller's daily activities let alone describe how those daily activities are inconsistent with Dr. Strus's findings that Fuller was disabled.[3] Also, a blank reference to "other evidence in the record" is a vague statement that leaves this Court guessing at what other evidence is inconsistent with Dr. Strus's opinion and how that evidence is inconsistent with Dr. Strus's opinion. See Boiles v. Barnhart, 395 F.3d 421, 426 (7th Cir. 2005) (indicating the ALJ did not explain how other evidence in the record contradicted a treating physician's opinion). Simply put, the ALJ has not provided a logical bridge that allows this Court to determine how the ALJ reached his conclusion that Dr. Strus's opinion was not supported by other evidence in the record.

The ALJ also does not explain how Fuller's mental status examination results do not support Dr. Strus's opinion. The ALJ states, "the claimant did not demonstrate any problems in concentration, memory, judgment, or abstraction during his mental status examination." (Tr. 16). However, this explanation is also inadequate. The ALJ does not reference any medical evidence, by doctors or otherwise, that Fuller's mental status examination results are inconsistent with a finding of disability based on depression. In fact, the ALJ even disregards the opinions of

---

[3]The SSA administration argues that the ALJ discusses Fuller's daily activities, the ALJ only discusses Fuller's daily activities in regards to Fuller's credibility. (Tr. 17). It appears the ALJ discusses Fuller's daily activities with regards to Fuller's credibility because the first sentence of the paragraph reads, "I have also taken the claimant's subjective description of his symptoms into consideration." (Id.). At no time in that paragraph or the following paragraphs does the ALJ explain how Fuller's daily activities contradict the findings of Dr. Strus's. Simply mentioning daily activities without reference to Dr. Strus is not an explanation that allows this Court to follow the ALJ's analysis.

12

the State Agency physicians.[4]  Because he does not point to any medical evidence or authority in the record to support his conclusion, this Court is left wondering how the ALJ determined that no problems in concentration, memory, judgment, or abstraction contradict Dr. Strus's opinion. "An ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record." Clifford, 227 F.3d at 870; 20 C.F.R. § 404.1527(d)(2); Rohan, 98 F.3d at 968.  Without relying on consulting physicians or other medical evidence, the ALJ simply substituted his lay opinion for that of a trained psychologist. This error, by itself, warrants a remand.  See Rohan, 98 F.3d at 971.

In summary, the ALJ has failed to provide any adequate explanation for his conclusions. More fatally, though, the ALJ reached some of his conclusions by substituting his opinion for that of a medical witness.  Consequently, this Court cannot conclude that the ALJ's decision in this regard is supported by substantial evidence.  Despite this conclusion, the ALJ's decision still might be supported by substantial evidence if he adequately articulated that Dr. Strus's opinion was internally inconsistent.

                        b.        The ALJ did not adequately articulate why Dr. Strus's opinion was internally inconsistent

This Court can not agree with the ALJ's conclusion that Dr. Strus's opinion was internally inconsistent, and the ALJ has not adequately articulated why it is.  Internal inconsistencies may provide good cause to deny controlling weight to a treating physician, but the ALJ must adequately articulate his reasoning why a treating physician's statements are

---

[4]"I have also considered the opinions of the State Agency physicians and psychologists who reviewed the claimant's medical records at the initial and reconsideration levels.  In so doing, I have specifically examined the evidence of record and find that the State Agency opinions are not well supported in view of other substantial evidence in the record."  (Tr. 16).

inconsistent with the treating physician's finding regarding disability.  Clifford v. Apfel 227 F.3d 863, 871 (7th Cir. 2000); Knight v. Chater, 55 F.3d 309, 314 (7th Cir. 1995).  The ALJ indicated,

> "Dr. Strus' opinion is inconsistent with his own treatment notes.  In fact, Dr. Strus' treatment notes indicate that the claimant worried about the status of his disability claim, but otherwise did not have any real periods of despair or deep depression and was generally euthymic . . . Indeed, Dr. Strus stated in November 2001, that the claimant had psychological problems, but he thought the claimant's disability was based on his medical difficulties."

(Tr. 16).  In the notes the ALJ is referring to, Dr. Strus does not specifically state that Fuller is not disabled or question whether Fuller is disabled.[5]  Dr. Strus indicates Fuller is showing improvement, but "showing improvement" does not equate to "not disabled."  Consequently, on this record this Court cannot agree that Dr. Strus's notes indicating that Fuller was showing improvement contradict Dr. Strus's conclusion that Fuller was disabled.  The ALJ does not explain how he concluded that Dr. Strus's notes were inconsistent with Dr. Strus's ultimate conclusion that Fuller was disabled because of his depression.  In essence, the ALJ simply identifies some of Dr. Strus's notes and states that they are inconsistent with Dr. Strus's conclusion.  Because this Court is unable to trace the ALJ's reasoning he used to reach the conclusion that Dr. Strus's notes were inconsistent with his opinion, this Court cannot conclude that the ALJ's determination that Dr. Stus's opinion was internally inconsistent is supported by substantial evidence.

---

[5]On May 22, 2001, Dr. Strus indicates Fuller is doing well.  (Tr. 167).  On June 5, 2001, Dr. Strus indicated Fuller has had less depression in the last few months than he ever has had as an adult, and that he had not had any periods of despair and deep depression.  (Tr. 166).  Around the end of June, Dr. Strus indicated Fuller was increasingly improving.  (Tr. 164).  On August 21, 2001, Dr. Stus indicated Fuller was generally euthymic and was at the best he has ever seen him.  (Tr. 149).  While these notes indicate improvement, at no time do they equate to a statement that blatantly contradicts Dr. Strus's conclusion that Fuller is suffering from depression and is disabled.

14

Furthermore, the ALJ relied on one statement by Dr. Strus as evidence that his opinion was internally inconsistent.  Dr. Strus states:

> He has also been turned down again for disability and he is very concerned about that because in a few months he won't have any insurance benefits and he is almost phobic about that situation happening.  **He does have myriad psychological problems, but I think the disability is based on his medical difficulties**."

(Tr. 56) (emphasis added).  The ALJ emphasized the last sentence as evidence that Dr. Strus's opinion was internally inconsistent.  However, this Court cannot agree.  The statement itself is unclear.  Dr. Strus could be indicating that he believes Fuller is disabled because of his physical disabilities, or just as easily, Dr. Strus could be indicating what he believes the reviewing party of his disability benefits believes.  If the ALJ had adequately articulated why Dr. Strus's notes were otherwise inconsistent, or if the ALJ had pointed to some objective evidence demonstrating internal inconsistency, perhaps this sentence would be illustrative.  However, the ALJ has failed to do either of these things.  Consequently, this Court cannot find that the ALJ's decision was supported by substantial evidence based on this justification alone.

Finally, this Court notes the ALJ's general finding that Dr. Strus appeared to be biased is not a sufficient basis to discount Dr. Strus's opinion.[6]  "The ability to consider bias . . . is not synonymous with the ability to blithely reject a treating physician's opinion or to discount that physician's opportunity to have observed the claimant over a long period of time."  Micus v. Bowen, 979 F.2d 602, 609 (7th Cir. 1992).  As previously stated, the ALJ failed to adequately explain how evidence in the record supported his determination that the objective medical

---

[6] The ALJ states, "Although Dr. Strus' [sic] reported some worsening of the claimant's symptoms in December 2001 and early 2002, this essentially occurred because the claimant was notified that his disability benefits through his employer were going to be terminated . . . . I note that the claimant appears to have inferred to Dr. Strus that he was responsible for the termination of the claimant's disability benefits . . . . I also note that Dr. Strus' treatment notes thereafter tend to contradict his earlier statements about the claimant's condition."

15

evidence in the record did not support Dr. Strus's opinion. Consequently, a finding of possible bias by itself is not a sufficient basis to reject Dr. Strus's opinion.

In summary , the ALJ failed to adequately articulate his reasoning for not awarding Dr. Strus's opinion controlling weight. Also, the ALJ improperly substituted his opinion for a treating physician. As a result, this Court recommends that a remand is warranted.

### III.   CONCLUSION

This Court cannot determine whether the ALJ's determination that Fuller's physician, Dr. Strus, was not entitled to controlling weight was supported by substantial evidence. As a result, this Court **REPORTS AND RECOMMENDS** that this case should be **REVERSED** and **REMANDED** to the Commissioner for proceedings consistent with this opinion pursuant to sentence four (4) of 42 U.S.C. § 405(g).

> **NOTICE IS HEREBY GIVEN that within ten (10) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER**

**SO ORDERED.**

Dated this 2nd Day of February, 2007.

s/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge

16